David W. Corneil, OSB No. 210679
dcorneil@grsm.com
Direct Dial: (503) 503-382-3892
Y. Moin Ghadimi, OSB No. 180304
yghadimi@grsm.com
Direct Dial: (503) 382-3891
GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, Oregon 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

*Attorneys for Defendants*
*Metco Investment Realty, Inc., Matthew Bryson, Kim Armstrong, and Patrice Slaten*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**EUGENE DIVISION**

| | |
|---|---|
| CAROLYNE LOHR, by and through her Next Friend Daniel Lohr; and DANIEL LOHR, individually,<br>Plaintiffs,<br>v.<br><br>METCO INVESTMENT REALTY, INC.; MATTHEW BRYSON, individually and as Principal Broker; KIM ARMSTRONG, individually and as Property Manager; PATRICE SLATEN, individually and as Agent; BENNY POON and MARY POON, individually and as property owners; BRIAN COX, individually, as attorney participating in the discriminatory denial, JOHN DOE 1 (Supervisor); and JOHN DOE 2 (Additional parties to be identified through discovery),<br><br>Defendants. | Case No. 6:26-cv-00034-AP<br><br>**DEFENDANTS METCO INVESTMENT REALTY, INC., MATTHEW BRYSON, KIM ARMSTRONG, AND PATRICE SLATEN'S MOTION FOR PROTECTIVE ORDER**<br><br>Oral Argument Requested |

NOW COME Defendants Metco Investment Realty, Inc. ("Metco"), Matthew Bryson,

Kim Armstrong, and Patrice Slaten (collectively "Defendants"), and for their Motion for Protective Order hereby state as follows:

## LR 7.1 CERTIFICATION

Counsel for Defendants made a good-faith effort to resolve the issues in dispute in this Motion relative to the Court's form protective order by conferring with Plaintiff Daniel Lohr through a telephone call on October 2, 2026.[1] The parties could not reach an agreement on the issues presented herein.

Jimmy Chen, the son-in-law of Benny and Mary Poon, also attended the call. He did not express any opinion as to the protective order.

After receipt of Plaintiffs' Third Set of Requests for Admissions, Defendants attempted to confer with Plaintiffs on October 8, 2027, to request a limitation on the number of Requests for Admissions, as further detailed below. No response was received from Plaintiffs.

## MOTION

Defendants seek the entry of the Court's form Tier 1 protective order (the "Protective Order") (Exhibit 1) pursuant to Fed. R. Civ. P. 26(c) and LR 26-4 to ensure that certain documents produced, and that could potentially be produced, pursuant to Plaintiffs' First Request for Production of Documents are maintained confidential and not used, distributed, or otherwise made public.

Further, Defendants have now received 192 requests for admissions spread across three (3) separate requests. These requests are grossly excessive, unduly burdensome, and beyond the scope of what would be considered reasonable under the circumstances. Defendants respectfully request that Plaintiffs be limited to a combined total of 50 requests for admissions.

[1] Mr. Lohr is recording conferral calls. Defendants request that this practice cease immediately.



GORDON REES SCULLY MANSUKHANI LLP
1300 SW Fifth Ave., Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

Notwithstanding, nothing herein should constitute a stipulation or representation that certain documents will be produced. Defendants reserve all rights to object to the production of documents in response to requests that are overly broad, unduly burdensome, irrelevant, or otherwise prohibited.

## FACTUAL BACKGROUND

Plaintiffs are *pro se* litigants who bring a number of claims arising out of their attempts to apply for a rental unit at a property managed by Metco. *See generally,* First Amended Complaint (ECF 9) ("Complaint"). In broad terms, Plaintiffs bring two categories of claims.

### a. Mr. Lohr's Claims of Religious Discrimination.

First, Mr. Lohr contends that he was discriminated against because he refused to provide his social security number ("SSN"), or verification thereof,[2] with his rental application. He claims that this constituted religious discrimination due to his claimed religious beliefs against "numbering of the flesh." Complaint at ¶¶ 20, 28. He purports that his religious beliefs are "rooted in religious objection to government identification systems, specifically the compelled use of a Social Security Number as a condition of housing access." Complaint at ¶51. Mr. Lohr's rental application shows that he did in fact provide a social security number with his rental application. ECF 9-1 at 53 (Text at 9:04 am).

When Mr. Lohr was asked to verify his SSN by providing his social security card, he refused. Complaint at ¶26. Initially, Mr. Lohr informed Metco that he had lost his social security card, before later informing them of his refusal based on his claimed religious beliefs. ECF 9-1 at 52 (Text at 9:08 am).

---

[2] The Complaint is inconsistent as to whether Mr. Lohr is alleging that he never provided his SSN (Complaint at ¶20) or that he refused to provide verification of his SSN. (Complaint at ¶26)



GORDON REES SCULLY MANSUKHANI LLP
1300 SW Fifth Ave., Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

When Metco offered to verify his SSN through other means, such as his tax returns, Mr. Lohr refused this as well, implying that he has not filed taxes because it is a "scam." ECF 9-1 at 52 (Texts beginning at 9:10 am). He boasted of taking the IRS to court and winning on unspecified grounds. ECF 9-1 at 52 (Text at 9:11 am).

Metco then explained to Mr. Lohr the reason they require verification of SSNs, informing him that in the past, Metco had issues with "people using someone else's SSnumber [sic]."[3] ECF 9-1 at 52 (Text at 9:11 am). Mr. Lohr still refused and never provided verification of his SSN.

Metco also attempted to obtain financial verifications for Mr. Lohr. During its attempts, Mr. Lohr became increasingly evasive and argumentative. *See e.g.* ECF 9-1 at 50 (Text at 9:43 am); ECF 9-1 at 47 (Texts at 12:09 pm and 12:22 pm). For example, he initially provided screenshots of purported bank statements without his name on them, ECF 9-1 at 50 (Text at 9:38 am), and the email he provided for his rental reference was initially no good. ECF 9-1 at 49 (Text at 10:10 am). Metco was never able to verify Mr. Lohr's claim of self-employment income through his rental properties or through any other sources he claimed.

Ultimately, Mr. Lohr's rental application was denied. ECF 9-1 at 61 and 66. He contends that in denying his application, Defendants discriminated and retaliated against him, among other allegations.

**b. Ms. Lohr's Claims of Disability Discrimination.**

The second category of claims relate to Ms. Lohr's claims of discrimination based on an unspecified disability. On January 20, 2025, Ms. Lohr, through Mr. Lohr, submitted a rental application for the same property, in which she alleges to have provided documentation of her

[3] Mr. Lohr has admitted to being the victim of identity theft. ECF 9-1 at 62 ("We were victims of identity theft some years ago.").

social security retirement income. Complaint at ¶21. There is no allegation that any purported disability was disclosed with Ms. Lohr's rental application.

It was not until three (3) days later, on January 23, 2025, that Mr. Lohr informed Metco of Ms. Lohr possibly having a disability. Initially, he claimed Ms. Lohr was disabled and requested a reasonable accommodation without specifying what Ms. Lohr was seeking. ECF 9-1 at 44. When asked for relevant information relating the accommodation request, Mr. Lohr backtracked and indicated that Ms. Lohr is "80 years old and is ***apparently*** disabled." ECF 9-1 at 44 (Text at 1:37 pm) (emphasis added).

Mr. Lohr indicated that they are "just asking for a little help on the income front, or any other concerns, if that is any concern regarding a decision on our application. [sic]. ECF 9-1 at 44 (Text at 1:37 pm). No other requests for accommodations were made, to the extent that statement by Mr. Lohr even constitutes a request for reasonable accommodation.

Her application was ultimately denied as well. Ms. Lohr alleges that that Defendants failed to engage in the interactive process and failed to accommodate her disability, among other allegations.

**c. Plaintiffs' Discovery Requests.**

Plaintiffs have served Defendants with their First Requests for Production of Documents on September 17, 2026, consisting of 35 broad requests for documents. (Exhibit 2) Plaintiffs also served a second set of requests for documents consisting of another 10 requests. This is in addition to 109 requests for admissions (Exhibit 3) and 25 interrogatories. A second set of requests for admissions were received on October 5, 2026 with 29 new requests. (Exhibit 4) Plaintiffs subsequently served a third set of request for admissions with an additional 52



GORDON REES SCULLY MANSUKHANI LLP
1300 SW Fifth Ave., Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

requests, bringing the total to 192 requests for admissions. (Exhibit 5)

As part of their requests for documents, Plaintiffs seek any agreements between Metco and consumer reporting agencies such as Appfolio and TransUnion (Request #5), internal documents of Metco pertaining to its screening criteria (Request #8), ways in which it evaluates applicants (Request #10), internal communications (Request #14), communications between Metco and its counsel (Request #18), its property management agreement (Request #20), internal policies and procedures (Request #21), and training materials (Requests #22).

Plaintiffs also seek complete tenant files and documents pertaining to rental applications submitted to Metco. (Requests ##23, 24, 25, and 26)

## LEGAL STANDARD

Rule 26(c) authorizes the district court to issue "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden." District courts also possess "broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, but not limited to, trade secrets or other confidential research, development, or commercial information." *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (citing Rule 26(c)(7); see also *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (trial court has "broad discretion ... to decide when a protective order is appropriate and what degree of protection is required.")

This includes where there is a need "to prevent disclosure of information that could be damaging to reputation and privacy." *Pegatron Technology Service, Inc. v. Zurich American Ins. Co.,* 377 F. Supp. 3d. 1197, 1202 (D. Or. April 29, 2019).

///



**GORDON REES SCULLY MANSUKHANI LLP**
1300 SW Fifth Ave., Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

## ARGUMENT

### 1. Good Causes Exists for a Protective Order.

#### a. Plaintiffs do not dispute the need for a Protective Order.

As a threshold matter, Plaintiffs do not dispute the need for a protective order. During the conferrals, Plaintiffs submitted a proposed protective order and thus far have not indicated any opposition to a protective order being entered, albeit in some different form.

Further, Plaintiffs' Requests stipulate that certain information can be redacted "pursuant to a protective order," seemingly thereby acknowledging the need that a protective order to be entered in the case. (Exhibit 2 at #23)

#### b. Plaintiffs' Requests Necessitate a Protective Order.

##### i. The Requests seek proprietary, confidential, and private information form which irreparable harm would result.

Plaintiffs seek irrelevant, invasive, broad, confidential, proprietary, and private documents about Metco, its internal policies and practices, and even every single tenant file in its possession. Defendants are still assessing what documents they have in their possession and which requests they intend to object to, but the extensive requests from Plaintiffs require a protective order to be entered to ensure the confidentiality of any documents that are ultimately produced.

Specifically, requests for documents relating to Metco's internal processes, procedures, training, as well as its screening criteria and contracts with other parties and vendors are confidential and proprietary. Significant harm could result if these documents were disseminated to the public because it would undermine the competitive advantage Metco has in its competition with other property management services companies.

Further, Plaintiffs Requests are so broad that they specifically seek documents regarding each and every single tenant since January 29, 2025. (Exhibit 2 at #23) If these documents were to be produced, either voluntarily or pursuant to a court order, a protective order would be



GORDON REES SCULLY MANSUKHANI LLP
1300 SW Fifth Ave., Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

needed to maintain the privacy and confidentiality of all tenants residing at the property. This is information that would be incredibly damaging if made public, as to tenants who have no involvement in this matter and who should not have any information about their applications or tenancy made public.

Irreparable harm would likely result if information about tenants were disclosed to third parties outside of this suit, likely in the form of tenant complaints, damage to Metco's reputation and business, and loss of income resulting from potential tenants refusing to apply to properties which Metco manages.

**ii. There are risks with pro se Plaintiffs.**

Plaintiffs are pro se and it is unclear at this time if they have any system by which documents received are stored in a safe and secure location. Plaintiffs are also parties to another lawsuit *Lohr & Lohr v. Colardo Lake Cooperative Inc., et al.,* 6:26-cv-00456-AP, in which they are suing another property management company.

Metco is concerned about any disclosures of its internal practices and procedures, as well as the names and identifies of anyone involved in this matter, being made to Mr. Lohr.

**2. The Court's Tier 1 Protective Order is Sufficient to Protect the needs of all Parties.**

Defendants ask this Court to enter the Tier 1 Protective Order that is available on the Court's website as it is perfectly sufficient to balance the needs of the parties herein. (Exhibit 1) It has already been held to adequately address "the sensitive nature of…documents." *See MacLaren v. PHH Mortgage Corporation,* 2025 WL 1069587 at *2 (D. Or. April 9, 2025).

The Protective Order balances the interest in all sides in allowing Plaintiffs to obtain relevant documents that they seek, while providing Defendants with the security of a court order that any handling of documents violative of the Protective Order will result in significant consequences for Plaintiffs.

The Protective Order sufficiently limits the use of confidential documents, while at the



GORDON REES SCULLY MANSUKHANI LLP
1300 SW Fifth Ave., Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

same time giving Plaintiffs the flexibility to utilize any confidential documents through the course of this matter, including to independent consultants or experts.

Further, the Protective Order provides a mechanism by which Plaintiffs can dispute the confidential status of any claimed document, and provides an opportunity for conferral so that any differences may be resolved. To the extent a motion is filed, the burden always rests on the party seeking to protect a document to establish "good cause" for why the document should not be disclosed.

By contrast, Plaintiffs' proposed protective order is onerous, unreasonably burdensome, and places unreasonable obligations on the disclosing party. For example, Plaintiffs seek to require Defendants to confer *before* designating a document as confidential, then to produce both a redacted and unredacted copy of each document, including a designated index and log of each redaction, adds additional filing requirements, and presents unreasonable methods to challenge a confidential designation, among further issues.

These requirements go far beyond what is considered normal and typical in a matter such as this, and place significant obligations that far exceed the requirements of the court's Protective Order. No good cause exists for the requirement that these provisions be included.

**3. <u>A Protective Order is needed to Limit Plaintiffs' Requests for Admissions.</u>**

Plaintiffs' 192 requests for admissions are grossly excessive, unduly burdensome, and are an unreasonable number of requests to serve on a party. These requests are excessive in and of themselves, but especially when taken with the 25 interrogatories and 35 requests for documents. The totality of these discovery requests constitutes an abuse of the discovery process.

The sheer volume of requests for admissions can be unduly burdensome and oppressive. *See Stokes v. Interline Brands, Inc.,* 2013 WL 6056886, at *2 (N. D. Cal. November 14, 2013) (finding plaintiff's 1,059 requests for admissions unreasonable and limiting the requests to just 25 outside those requesting the genuineness of documents).



GORDON REES SCULLY MANSUKHANI LLP
1300 SW Fifth Ave., Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

Requests for admissions "are sought, first, to facilitate proof with respect to issues that cannot be determined from the case, and second, to narrow the issues by eliminating those that can be." *Conlon v. United States,* 474 F.3d 616, 622 (9th Cir.2007). As such, Rule 36(b) "seeks to serve two important goals: truth-seeking in litigation and efficiency in dispensing justice" such that it "is not to be used in an effort to 'harass the other side' or in the hope that a party's adversary will simply concede essential elements." *Id.* at 621-22.

Here, Plaintiffs seek extensive and unreasonable requests relating to almost every aspect of the care. This is an improper and abusive method of utilizing requests for admissions. By way of example, in their First Set of Requests for Admissions, Plaintiffs seek to have Defendants admit intricate and immaterial requests that offer now value to the case. This includes requests that a field contained a nine-digit number or that the rental application contained certain entry fields. Exhibit 3 at 5 and 7. Plaintiffs also seek redundant and unnecessary requests that certain applications and text messages, which are clearly documented, simply occurred. *See* Exhibit 3 at 1, 2, 8, 23-27, 35-42, 66-68. Numerous requests are also irrelevant and immaterial to the case at large. Exhibit 3 at 14-22, 69-73, 76-81.

Plaintiffs' Second Set of Requests for Admissions suffers from similar issues pertaining to scope and relevance. Exhibit 4 at 110, 112, 114, 116-121, 129-139. Plaintiffs' Third Set of Requests for Admissions is more of the same. Exhibit 5 at 151-155, 158-165, 166-172, 174, 188-192. These requests are also often duplicative and overlapping with topics and issues in other requests.

Upon information and belief, Plaintiffs are using AI to generate blanket requests without ensuring that the requests are relevant to the issues herein, appropriate in scope, and material to the case.

There is no reason why Defendants should respond to these 192 requests when they are rife with issues. Plaintiffs should be required to narrow their request and tailor them



**GORDON REES SCULLY MANSUKHANI LLP**
1300 SW Fifth Ave., Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

appropriately to the needs of the case. This can easily be done with a cap of 50 total requests.

4. **<u>Additional Time is Necessary to Produce Documents and Response to the Requests for Admissions.</u>**

As indicated, Defendants have not yet determined which documents, if any, they wish to object to or produce. Irrespective, additional time is needed to ensure that a protective order, in whatever form, is entered. Once entered, Defendants will require time to conform any documents produced with the requirements of the protective order adopted by the Court. Defendants therefore request an additional 14 days from date of the entry of the protective order to produce any documents they deem responsive.

Additionally, Defendants request an extension of time to respond to however many requests for admissions the Court allows. Defendants respectfully request 30 days from the date of service of a final request for admissions incorporating the number of requests allowed by the Court.

## CONCLUSION

Plaintiffs seek extensive documents, few of which are relevant to the case, and which place an unreasonable and undue burden on Metco. Irrespective of whether these documents and requests are objected to, a protective order is necessary to protect any confidential or propriety disclosures, and to allow for the efficient exchange of relevant documents. Irreparable harm would result without such protections. The entry of the Court's Protective Order is an effective method to balance the interests of the parties.

WHEREFORE, Defendants respectfully request that:

1. The Court enter the enclosed Tier 1 Protective Order;
2. The time to produce any documents that would fall under the protection of the protective order, and to which Defendants do not raise objections, be extended to 14 days after entry of the Protective Order;



GORDON REES SCULLY MANSUKHANI LLP
1300 SW Fifth Ave., Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

3. The Court limit Plaintiffs to a total of 50 requests for admissions, and allow Defendants 30 days from service thereof to respond;
4. That any recording of calls cease immediately; and
5. For any other relief deemed equitable.

Dated: October 9, 2026

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By: *s/ Y. Moin Ghadimi*

David Corneil, OSB No. 210679
dcorneil@grsm.com
Y. Moin Ghadimi, OSB No. 180304
yghadimi@grsm.com
*Attorneys for Defendant Metco Investment Realty, Inc., Matthew Bryson, Kim Armstrong, and Patrice Slaten*

## DECLARATION OF SERVICE

I hereby certify that on this 9th day of October, 2026, a true and correct copy of the foregoing document was filed with the Court through the CM/ECF system and sent electronically to all registered participants as identified on the Notice of Electronic Filing, and via electronic mail and regular mail to Pro Se Parties.

Daniel Lohr
38965 Dexter Road SPC 20
Dexter, OR 97431
P: 541-292-2829
tinyhouseshed@gmail.com

***Plaintiff Pro Se***

Carolyne P. Lohr
38965 Dexter Road SPC 20
Dexter, OR 97431
P: 541-292-2829
gamechangerbuilding@gmail.com

***Plaintiff Pro Se***

Benny Poon
Mary Poon
1124 NE 186th Dr.
Portland, OR 97230
danapoon@ymail.com

***Defendants Pro Se***

*/s/ Melissa Capps*
Melissa Capps, Legal Assistant



**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600